UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRELL SLAPE,<br><br>      Petitioner,<br><br>   v.<br><br>BOBBY HAASE, Warden,<br><br>      Respondent. | Case No. 16-05408 EJD (PR)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY; DIRECTIONS TO CLERK** |

Petitioner filed a <u>pro se</u> petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging his state conviction. The Court found the petition (Docket No. 1, "Petition"), stated cognizable claims which merited an answer from Respondent. (Docket No. 12.) Respondent filed an answer on the merits. (Docket No. 18, "Answer.") Petitioner filed a Traverse. (Docket No. 21, "Traverse.")

For the reasons set forth below, the Petition for a Writ of Habeas Corpus is **DENIED**.

## I. BACKGROUND

In May 2012, Petitioner was found guilty by a jury in Humboldt County Superior Court ("trial court") of having committed sexual penetration by a foreign object, sexual battery by fraud, and misdemeanor battery, against multiple women. (<u>See</u> Pet. at 1.) On September 14, 2012, Petitioner was sentenced to seven years in prison. (<u>See</u> Ans. at 1;

United States District Court
Northern District of California

Ans. Ex. A at 839.[1]) After less than three and one-half years in prison, Petitioner was released on February 20, 2016. (See Pet. at 2.) Petitioner filed the instant Petition while "at home on parole." (Id.)

On July 30, 2014, the California Court of Appeal ("state appellate court") affirmed the judgment in a reasoned opinion. (Ans., Ex. E; see also People v. Slape, No. A136669, 2014 WL 3735360, at *1 (Cal. Ct. App. July 30, 2014).) Petitioner did not pursue his appeal to the California Supreme Court. (See Ans. at 1.)

Petitioner filed a petition for a writ of habeas corpus in Humboldt County Superior Court. (See Ans., Ex. G.) The petition was denied in a reasoned opinion. (See id.)

Petitioner filed a petition for a writ of habeas corpus in the California Court of Appeal for the First Appellate District. The petition was summarily denied.

Petitioner filed a petition for a writ of habeas corpus in the California Supreme Court. (See Ans., Ex. F.) The petition was summarily denied. (See id.)

On September 21, 2016, while on parole,[2] Petitioner filed the instant Petition. (See Pet.)

## II. STATEMENT OF FACTS

The following facts are taken from the opinion of the state appellate court on direct appeal:

> Defendant committed his crimes against two victims, Jane Doe One and Jane Doe Two, while giving them massages at his business. [FN 2]

---

[1] Because Petitioner attached numerous exhibits to the Petition, and Respondent likewise attached exhibits to the Answer, the Court shall differentiate between exhibits by referring to them as "Petition Exhibit" or "Answer Exhibit."

[2] The Ninth Circuit has held that, where a petitioner is on parole at the time his habeas petition is filed, this is sufficient to establish jurisdiction. See Chaker v. Crogan, 428 F.3d 1215, 1219 (9th Cir. 2005). That parole expires while the habeas petition is pending does not deprive the court of jurisdiction. See id. Moreover, continuing to be "subject to California's sex offender registration requirement" is sufficient to prevent a case from becoming moot by the expiration of parole. Fowler v. Sacramento Cty. Sheriff's Dep't, 421 F.3d 1027, 1033 (9th Cir. 2005).

Accordingly, although petitioner is no longer in prison and is no longer on parole, the Court continues to have jurisdiction and this case is not moot due to the fact that Petitioner is a sex offender and required to register as such under California law.

[FN 2: In his briefing on appeal, defendant almost entirely ignores the facts underlying his convictions, instead limiting his "Statement of Facts" to an explanation of his massage therapy practice, a discussion of his hearing difficulties, a discussion of the testimony that his proposed expert witnesses would have provided, and a summary of the procedural history of the case. While recital of the facts of this case can be discomfiting, these facts are necessary to an understanding of the issues defendant raises on appeal, particularly his challenge to the exclusion of expert evidence on "referred sensation." We remind defendant's counsel of his obligation to set forth the significant facts in appellant's opening brief. (Cal. Rules of Court, rule 8.204(a)(2)(C).)]

Doe One had injured her psoas muscle, [FN 3] which caused her pain from her lower back down to her thigh, and in 2007 was referred to Back in Action (or Healthy Life Alternatives), a business owned by defendant. During her first appointment, defendant told her he would give her a massage, and directed her to undress. He massaged the inside of her upper thighs as she lay on her back, and his hand brushed against her genitals a couple of times. He suddenly put his fingers inside her vagina, directly onto the area that was painful, and she was immediately in pain. A female physical therapist had performed internal massage of the knots inside Doe One's vagina in the past, but she had not given defendant permission to do so.

[FN 3: The psoas is "a large flexor muscle of the hip-joint which arises from the lumbar vertebrae and sacrum and is inserted along with the iliac into the lesser trochanter of the femur." (12 Oxford English Dict. (2d ed. 1989) p. 755.).]

Defendant told Doe One to lie on her stomach and told her to lift her hips off the table. He again inserted his fingers into her vagina, causing her to have an orgasm. He told her to lie on her back again, asked her if he could massage her breasts, and did so. After the massage, Doe One tried to behave normally. She wrote a check to pay for the massage, made more appointments, and left. She was upset afterward, discussed the matter with her husband and pastor, and reported the incident to the police.

Doe One had taken lorazepam (Adavan) that morning, and an Ambien tablet the previous night. The lorazepam relieved stress, but she did not otherwise feel its effects. She had not noticed any adverse effects from the Ambien, which helped her sleep. She had been prescribed, and occasionally took, other medications for migraines (Maxalt and Soma) and Percocet, but did not recall taking them before the incident. She also took

Cortef, which she said was a hydrocortisone in tablet form, and which she said caused no side effects other than weight gain. Defendant presented evidence that some of the medications Doe One took acted as central nervous depressants and could affect memory.

Jane Doe Two was a massage therapist. She sought treatment for back problems in 2009, and defendant told her that since her insurance would not pay for his services, she could use some of his business's equipment if she gave him massages in return. After they spoke in his office, he told her he had a massage certificate and suggested they trade half-hour massages. While defendant was massaging Doe Two, he asked if she knew where her first "chakra" was. She said she did not, and he slipped his hand under the sheet covering her and under her underwear, and put his hand and finger at the opening of her vagina. He asked her to put her hand to his other hand, and asked if she could feel the vibration between them. She was upset, but after the massage she was afraid defendant might have locked the door or that he might pursue her if she tried to leave, and she decided to give him a massage before leaving. As she did so, he told her he wanted her to work on his chakra, took her hand, and placed it on his perineum. Doe Two told him she was not comfortable with that, and he asked her to continue massaging him. After the massage, Doe Two made more appointments with defendant because she was frightened that he would lock her up if he knew she was uncomfortable. She later reported the matter to the police.

Michael Drew, who had taught defendant massage therapy in 1996, testified that he taught his students that it is not appropriate to touch a client's genitals or massage a woman's breasts. However, internal or pelvic massage could be used as part of "trigger point therapy," [FN 4] to search for painful spots that might be referring pain to other areas. A massage therapist should only do so under the supervision of a doctor or other licensed medical professional.

> [FN 4: Drew explained that people develop trigger points from overuse injuries or acute injuries.]

Drew testified on cross-examination that there can be trigger points in the perineal area. He also testified that it was possible that if a massage therapist activated a nerve in the lower spine area, a sensation could be felt in the genital area, and that some of the nerves that run to the genital area might run through the psoas muscle. If a cramped muscle was released, the client could feel both painful and pleasurable sensations in the genitals. A client who was having referred sensation would feel it both where the pressure was applied and in the area to which the sensation was referred.

Janette Johnson, a certified massage therapist and massage therapy instructor, testified for the People as an expert in

4

massage therapy and professional standards of conduct. On cross-examination, she testified that when pressure was applied to a "trigger point," sensation could be referred to another site. When a muscle in the inner thigh area or perineum was activated, referred pain could be felt in the genitals.

M.G. testified that she received massage therapy from defendant in 1998, that he asked her to disrobe completely, and that over time, he focused his massages more on her crotch area and her breasts. On several occasions, as he worked on pressure points near her pubic area, he "hit" her genitals. After each massage, he would give her a hug in order to "crack [her] back," and on two occasions he kissed her.

Defendant testified in his own defense. He testified that he performed trigger point therapy on Doe One, and that it could be painful. He found trigger points in her right hip area, and "relieved the entrapment that was preventing circulation of the neuromuscular portion of her hip." When an entrapment was released, the client could feel sensations throughout the body. The psoas muscle encompassed the vagina, and when it was released, the client could experience sensation in the genitalia, because "those nerves that go to the genitalia actually go through the psoas muscle." This could result in a simulated orgasm. While he was massaging Doe One, he got no closer than three inches to her vagina, and he denied penetrating her. He massaged her right upper quadrant, but denied touching her breasts. When Doe One was on her stomach, he asked her to push her hips up into his hand so he could determine how much pressure she could withstand. He did not penetrate her as he did so, and he was not aware that she was having an orgasm. He believed both Doe One and Doe Two might have experienced referred sensation.

Defendant testified that Doe Two told him she was a massage therapist and that they agreed to trade massages. He said he was within a few inches of her genitals as he was massaging her, but denied touching them. He said Doe Two had asked for "chakra infusion," but that he was unable to "get to" chakra number one, located on the perineum, because of her body weight, so he went to chakra number two, just above the navel.

Defendant also testified that as part of the therapy he received for the effects of a broken back, a massage therapist regularly massaged his perineum. When Doe Two was massaging him, he placed her hand on his perineum.

Slape, 2014 WL 3735360, at *1–3.

# III. DISCUSSION

## A.    Legal Standard

This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); Rose v. Hodges, 423 U.S. 19, 21 (1975). The writ may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). The only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is in the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision. Williams, 529 U.S. at 412; Brewer v. Hall, 378 F.3d 952, 955 (9th Cir. 2004). While circuit law may be "persuasive authority" for purposes of determining whether a state court decision is an unreasonable application of Supreme Court precedent, only the Supreme Court's holdings are binding on the state courts and only those holdings need be "reasonably" applied. Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir.), overruled on other grounds by Lockyer v. Andrade, 538 U.S. 63 (2003).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's

6

case." <u>Williams</u>, 529 U.S. at 413. "Under § 2254(d)(1)'s 'unreasonable application' clause, . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." <u>Id.</u> at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." <u>Id.</u> at 409. The federal habeas court must presume correct any determination of a factual issue made by a state court unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Here, as noted above, the California Supreme Court summarily denied Petitioner's petitions for review. <u>See supra</u> at 2; (Ans., Ex. F). The Superior Court of California for the County of Humboldt ("Humboldt Court"), on collateral review, addressed all the claims in the instant petition. (Ans., Ex. G.) The Humboldt Court found some of the claims to be procedurally barred, and referred others to the appellate court for consideration. (<u>See id.</u>) The appellate court and the California Supreme Court then denied all of Petitioner's claims without comment.

As to the procedural bars, the Humboldt Court was the highest court to have reviewed the claims in a reasoned decision, and it is that decision that this Court reviews herein. <u>See Ylst v. Nunnemaker</u>, 501 U.S. 797, 803-04 (1991); <u>Barker v. Fleming</u>, 423 F.3d 1085, 1091-92 (9th Cir. 2005).

As to the claims that the Humboldt Court referred to the appellate court, because there is no reasoned opinion on collateral review, this Court "must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." <u>Harrington v. Richter</u>, 562 U.S. at 101. Accordingly, as to the substance of

Petitioner's claims, where there is no reasoned decision on collateral review, the Court will largely refer to the state appellate court's opinion on direct review.

The Supreme Court has vigorously and repeatedly affirmed that under AEDPA, there is a heightened level of deference a federal habeas court must give to state court decisions. See Hardy v. Cross, 132 S. Ct. 490, 491 (2011) (per curiam); Harrington v. Richter, 131 S. Ct. 770, 783-85 (2011); Felkner v. Jackson, 131 S. Ct. 1305 (2011) (per curiam). As the Court explained: "[o]n federal habeas review, AEDPA 'imposes a highly deferential standard for evaluating state-court rulings' and 'demands that state-court decisions be given the benefit of the doubt.'" Id. at 1307 (citation omitted). With these principles in mind regarding the standard and limited scope of review in which this Court may engage in federal habeas proceedings, the Court addresses Petitioner's claims.

**B.   Claims and Analysis**

The Petition raised, and the Court found cognizable, the following grounds[3] for federal habeas relief:

(1) actual innocence on the basis that certain elements of Petitioner's crimes were not met ("Claim 1");

(2) ineffective assistance of trial counsel on grounds not presented on direct appeal ("Claim 2");

(3) the trial court erred in admitting prejudicial propensity evidence of "unproven prior accusation" to prove intent ("Claim 3");

(4) ineffective assistance of trial counsel on grounds presented on direct appeal ("Claim 4");

(5) the trial court erred in excluding the testimony of two expert witnesses for the defense ("Claim 5");

(6) inadequate jury instructions ("Claim 6");

---

[3] The Court notes that Respondent conceded timeliness and exhaustion as to all claims. (See Ans.)

Order Denying Petition for Writ of Habeas Corpus; Denying COA
P:\PRO-SE\EJD\HC.16\05408Slape_den-habeas.docx

(7) failure to provide accommodations for his hearing disability ("Claim 7");

(8) failure to give jury instructions on defense arguments ("Claim 8");

(9) he was not given proper notice of the charges against him ("Claim 9");

(10) ineffective assistance of appellate counsel ("Claim 10"); and

(11) new evidence establishes that the trial court's exclusion of defense expert witnesses resulted in an unfair trial ("Claim 11").

## 1.    Procedurally Defaulted Claims

Respondent argues that Claims 1, 3, 6, 8, and 9 have been procedurally defaulted. (See Ans. at 10-11.) For the sake of efficiency, the Court will address this argument before considering the merits of petitioner's claims.

A federal court will not review questions of federal law decided by a state court if the decision also rests on a state law ground that is independent of the federal question and adequate to support the judgment. See Coleman v. Thompson, 501 U.S. 722, 729-30 (1991). In the context of direct review by the United States Supreme Court, the "adequate and independent state ground" doctrine goes to jurisdiction; in federal habeas cases, in whatever court, it is a matter of comity and federalism. Id. The procedural default rule is a specific instance of the more general "adequate and independent state grounds" doctrine. Wells v. Maass, 28 F.3d 1005, 1008 (9th Cir. 1994). In cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. Coleman, 501 U.S. at 750.

### a.  Claims 1, 3, 6, 8, and 9 have been procedurally defaulted

The Humboldt Court found that Claims 1, 3, 6, 8, and 9 could have been, but were not, raised on direct appeal. (See Ans., Ex. G at 12-14.) Accordingly, these claims had been procedurally defaulted under In re Dixon, 41 Cal. 2d 756 (1953). (See id.)

Dixon provides that to bring a claim in a state habeas corpus action a petitioner must first, if possible, have pursued the claims on direct appeal from his or her conviction unless the claim falls within certain exceptions.[4]  See Park v. California, 202 F.3d 1146, 1151 (9th Cir. 2000).  This is known as the "Dixon rule."  See id.

The Dixon rule is an adequate state procedural rule.  Johnson v. Lee, 136 S. Ct. 1802, 1803-04 (U.S. May 31, 2016).  Because the Humboldt Court expressly invoked Petitioner's failure to raise these claims on direct appeal as the sole reason for dismissing them, citing state procedural rules without reference to federal law, this ground was independent.  See Coleman, 501 U.S. at 729-30.  If a state court denies a habeas claim on Dixon grounds, as the Humboldt Court did here, the Supreme Court has held that federal habeas review is barred.  See Johnson, 136 S. Ct. at 1804 (noting that Dixon is a well-established procedural bar that is adequate to bar federal habeas review).

Because the United States Supreme Court has specifically held that Dixon rule "bar[s] federal habeas review," Johnson 136 S. Ct. at 1806, and because the Humboldt Court relied only on Dixon in rejecting Claims 1, 3, 6, 8, and 9, this Court cannot reach the merits of Claims 1, 3, 6, 8, and 9.[5]  See Coleman, 501 U.S. at 729-30.

### b. The procedural default is not excused.

There is an exception to procedural default, which applies when a petitioner shows that there is "cause" for the failure to comply with the state procedural rule and "prejudice" arising from the default, or that the failure to consider the claim will result in a fundamental miscarriage of justice.  Coleman, 501 U.S. at 750.  To establish cause, a petitioner must show that "some objective factor external to the defense impeded counsel's

---

[4] The exceptions to the Dixon rule are (1) fundamental constitutional error; (2) lack of jurisdiction over the petitioner; (3) the trial court's acting in excess of its jurisdiction or (4) an intervening change in the law.  See In re Harris, 5 Cal. 4th 813, 828 n.7 (1993) (identifying exceptions).  Petitioner acknowledges in the Traverse that the Humboldt Court considered the Harris exceptions.  (See Traverse at 17.)  The Court agrees with the Humboldt Court that none of the exceptions to the Dixon rule apply to the instant petition.  (See Ans., Ex. G, passim, discussing Harris exceptions.)
[5] Even if these claims were not procedurally barred, the Court would find that they fail on the merits for the reasons given, infra.

10

efforts to comply with the State's procedural rule." <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986) (emphasis added). To establish a "fundamental miscarriage of justice," a petitioner must demonstrate "a constitutional violation has probably resulted in the conviction of one who is actually innocent." <u>Wood v. Ryan</u>, 693 F.3d 1104, 1117-18 (9th Cir. 2012) (internal quotation omitted). A claim of actual innocence is rarely met and must be based on reliable evidence not presented at trial. <u>Casey v. Moore</u>, 386 F.3d 896, 921 n.27 (9th Cir. 2004).

Here, Petitioner has established neither cause and prejudice,[6] nor a fundamental miscarriage of justice.

### i. Petitioner did not establish cause as to Claims 3, 6, 8, and 9.

Petitioner does not provide a persuasive explanation for why Claims 3, 6, 8, and 9 were not raised on direct appeal.

Petitioner appears to argue that the procedural default is the result of his counsel's ineffectiveness (<u>see</u> Pet. at 23.), but this argument fails. To serve as "cause," the claim of ineffective assistance of counsel must have been presented as an independent claim to the state courts. <u>See</u> <u>Carrier</u>, 477 U.S. at 489.

As to Claims 3 and 6, it appears that Petitioner did not argue to the Humboldt Court that his procedural default was because of ineffective assistance of counsel. (<u>See</u> Ans., Ex. G at 1-3 (summarizing Petitioner's arguments to the Humboldt Court).) And although the Humboldt Court called Petitioner's attention to the problem of procedural default, Petitioner did not argue to the California Supreme Court that Petitioner procedurally defaulted Claims 3 and 6 because of ineffective assistance. (<u>See</u> Traverse at 6 ("Petitioner is aware he needs to give adequate explanation for his procedural default"); <u>see</u> <u>generally</u>, Ans., Ex. F at 19-21 (arguing against propensity evidence, without referring to ineffective assistance of counsel); 24 (arguing that jury instructions were inadequate, without referring

---

[6] If insufficient cause is shown, a court need not reach the prejudice question. <u>Smith v. Baldwin</u>, 510 F.3d 1127, 1147 (9th Cir. 2007).

to ineffective assistance of counsel).) Because Petitioner failed to argue to any state court that his procedural default of Claims 3 and 6 was the product of ineffective assistance, Petitioner has failed to establish cause as to Claims 3 and 6.

As to Claims 8 and 9, Petitioner argued to the California Supreme Court that these claims arose because his <u>trial</u> counsel was ineffective. (<u>See</u> Ans., Ex. F at 13-14 (claiming that trial counsel was ineffective in not ensuring defense arguments were put to the jury), and 26 (claiming that trial counsel was ineffective in not arguing about notice).) However, Petitioner did not argue to the California Supreme Court that his <u>appellate</u> counsel was ineffective in failing to raise these specific issues on appeal. (<u>See</u> Ans., Ex. F at 1-142.) Instead, Petitioner raised the general argument that appellate counsel was ineffective in not properly arguing trial counsel's ineffectiveness. (<u>See, e.g., id.</u> at 6-8, 123, 141.) This is insufficient to present a claim that appellate counsel was ineffective in not arguing about jury instructions or notice, as is required to show cause for the default of Claims 8 and 9. <u>See Resendez v. Robertson</u>, No. 2:18-03801 ADS, 2019 WL 1297948, at *4 (C.D. Cal. Mar. 20, 2019) ("[B]efore Petitioner can argue in federal court that appellate counsel's failure to raise the issue on appeal is cause for excusing the procedural default, he must allege in state court <u>that his appellate counsel was ineffective</u> for failing to raise the issue and exhaust that claim.") (emphasis added); <u>accord Benton v. Koenig</u>, No. 19-CV-01446-JD, 2019 WL 6465143, at *3 (N.D. Cal. Dec. 2, 2019) (finding a claim procedurally defaulted when appellate counsel failed to raise the claim on appeal, and petitioner did not claim ineffective assistance of appellate counsel); <u>see also Jackio v. Pfeiffer</u>, No. 2:16-CV-2812 WBS GGH, 2019 WL 130332, at *12 (E.D. Cal. Jan. 8, 2019) (finding a claim procedurally defaulted when the petitioner failed to "appeal on this ground and support it with record citations" because "Petitioner cannot simply claim that his appellate counsel was ineffective" in general terms), <u>subsequently aff'd</u>, 785 F. App'x 442 (9th Cir. 2019).

It is well-settled that a procedurally defaulted ineffective assistance of counsel claim is not cause to excuse the default of another habeas claim unless the petitioner can

satisfy the cause and prejudice standard with respect to the ineffective assistance of counsel claim itself. See Edwards v. Carpenter, 529 U.S. 446, 451-51(2000); Cockett v. Ray, 333 F.3d 938, 943 (9th Cir. 2003). Here, because Petitioner did not argue in state court that his appellate counsel was ineffective in failing to raise Claims 8 and 9, see supra, Petitioner defaulted any claim that appellate counsel was ineffective on thus ground. Accordingly, Petitioner's default of Claims 8 and 9 is not excused.

Petitioner appears to argue that his failure to raise a particularized ineffective assistance of appellate counsel claim should be excused under Martinez v. Ryan, 566 U.S. 1 (2012). (See Traverse at 6-8 (arguing that Martinez applies).) In support, he cites a Ninth Circuit case that applied Martinez to claims of ineffective appellate counsel. (See id. (quoting Ha Van Nguyen v. Curry, 736 F.3d 1287 (9th Cir. 2013).) However, the United States Supreme Court has since decided that Martinez does not extend to the situation presented here. See Davila v. Davis, 137 S. Ct. 2058 (2017); see also Hurles v. Ryan, 914 F.3d 1236, 1238 (9th Cir. 2019) (recognizing that Nguyen is no longer controlling, post-Davila). In Davila, the United States Supreme Court explained that Martinez applied to defaulted claims of ineffective trial counsel, but did not salvage procedurally defaulted claims of ineffective appellate counsel. See Davila, 137 S. Ct. at 2065-70; accord Easter v. Franke, 694 F. App'x 540, 541 (9th Cir. 2017) ("Davila holds that federal habeas courts cannot hear procedurally defaulted claims of ineffective assistance of appellate counsel."). The Ninth Circuit has since held that claims of ineffective appellate counsel are barred when not properly raised in state court, even if the petitioner was acting pro se when the claim was defaulted. See Senior v. Gilbert, 720 F. App'x 882, 883 (9th Cir.) ("The fact that Senior was appearing pro se when he failed to exhaust his ineffective assistance of counsel claim at the Washington Supreme Court is of no effect."), cert. denied sub nom. Senior v. Haynes, 139 S. Ct. 271 (2018).

Accordingly, Petitioner's failure to claim in state court that appellate counsel was ineffective in not presenting Claims 8 and 9 bars any such claim here.

13

Because Petitioner did not preserve a claim that appellate counsel was ineffective with regard to propensity evidence, jury instructions, or notice, Petitioner is unable to show cause for his procedural default of Claims 3, 6, 8, and 9.

### ii. Petitioner established cause, but not prejudice, as to Claim 1.

Unlike his other procedurally defaulted claims, Petitioner did argue to the California Supreme Court that his appellate counsel was ineffective in failing to argue that the elements of Petitioner's crimes were unsatisfied. (See Ans., Ex. F at 4-6.) Petitioner has thus established cause for his procedural default of Claim 1. However, Petitioner cannot establish prejudice. See generally Davila, 137 S. Ct. at 2065 ("It has long been the rule that attorney error is an objective external factor providing cause for excusing a procedural default only if that error amounted to a deprivation of the constitutional right to counsel.") (citation omitted).

Petitioner bears the burden of showing, not merely that errors at his trial created a possibility of prejudice, but that they "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." United States v. Frady, 456 U.S. 152, 170 (1982). Petitioner must show with "reasonable probability" that the outcome of the trial would have been different. See Frost v. Gilbert, 835 F.3d 883, 890 (9th Cir. 2016) (citing Strickler v. Greene, 527 U.S. 263, 296 (1999)) (finding no prejudice where evidence of guilt was so overwhelming, which included petitioner's own incriminating testimony, that there was no "reasonable probability" that jury would have acquitted petitioner based on a duress defense had they learned of additional impeachment evidence for one prosecution witness).

Here, Petitioner urges that his trial and appellate counsel were ineffective in failing to argue that the elements of Petitioner's crimes were not satisfied. As Respondent notes in the Answer, the jury is charged with deciding "whether the evidence satisfied those elements," and "[t]he jury instructions, not the arguments of counsel, are what control the jury's assessment of the evidence." (Ans. at 16.) The Court agrees with Respondent;

1   Petitioner cannot disguise a challenge to jury instructions as a new claim in order to

2   circumvent his procedural default.

3       In any event, for the reasons discussed infra, the Court concludes that Petitioner's

4   trial and appellate counsel were not ineffective. Quite simply, "[g]iven the evidence of

5   guilt presented at trial, there is no 'reasonable likelihood' that" arguments from counsel

6   regarding the elements of the crime "could have 'affected the judgment of the jury.'"

7   Frost, 835 F.3d at 890. Accordingly, Petitioner has failed to demonstrate prejudice, and

8   Claim 1 is procedurally defaulted.

9                   **iii.    Petitioner has not established a miscarriage of justice.**

10      If a state prisoner cannot meet the cause and prejudice standard, a federal court may

11  still hear the merits of the procedurally defaulted claims if the failure to hear the claims

12  would constitute a "miscarriage of justice." See McQuiggin v. Perkins, 569 U.S. 383, 391-

13  92 (2013). The Supreme Court limits the "miscarriage of justice" exception to habeas

14  petitioners who can show that "a constitutional violation has probably resulted in the

15  conviction of one who is actually innocent." Schlup v. Delo, 513 U.S. 298, 327 (1995).

16  Under this exception, a petitioner may establish a procedural "gateway" permitting review

17  of defaulted claims if he demonstrates "actual innocence." Schlup, 513 U.S. at 316 &

18  n.32.

19          [I]f a petitioner . . . presents evidence of innocence so strong that
            a court cannot have confidence in the outcome of the trial unless
20          the court is also satisfied that the trial was free of non-harmless
            constitutional error, the petitioner should be allowed to pass
21          through the gateway and argue the merits of his underlying
            claim.

22  Id. at 316. The required evidence must create a colorable claim of actual innocence, that

23  the petitioner is innocent of the charge for which he is incarcerated, as opposed to legal

24  innocence as a result of legal error. Id. at 321. "To be credible, such a claim requires

25  petitioner to support his allegations of constitutional error with new reliable evidence—

26  whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical

27  physical evidence—that was not presented at trial." Id. at 324. Because a Schlup claim

28

                                      15

1    involves evidence the trial jury did not have before it, the inquiry requires the federal court

2    to assess how reasonable jurors would react to the overall, newly supplemented record. Id.

3        Although Petitioner recites that he has "new" evidence (see Pet. at 7, 87-88), a

4    review of the record reveals that Petitioner has nothing of the kind. First, the supposedly

5    new evidence is not new at all. Instead, the document Petitioner proffers is a medical

6    narrative dated well before Petitioner's criminal trial. (See Pet., Ex. AA (dated May 22,

7    2007).) A document generated before Petitioner was even indicted hardly counts as

8    "new."

9        Moreover, the record suggests that this document – or one with similar content –

10   was available to defense counsel. Petitioner contends the document shows that one of his

11   victims, Jane Doe #1, had PTSD and was therefore an untrustworthy witness. (See Pet. at

12   7, 87-88.) Before trial, the prosecution filed a motion in limine to exclude testimony

13   regarding Jane Doe #1's alleged PTSD, which defense counsel had announced he would

14   use to impeach Jane Doe #1's testimony. (See Ans., Ex. A at 326-28.) Thus, not only did

15   defense counsel have access to the information contained in the supposedly new document,

16   defense counsel attempted to introduce that information at trial.

17       Second, there is no information regarding the authenticity or admissibility of this

18   document. Under Schlup, a petitioner must prevent "new reliable evidence" to support a

19   miscarriage of justice argument. Schlup, 513 U.S. at 324 (emphasis added). Petitioner has

20   not presented any facts or argument to suggest that this document is "reliable."

21       Third, even if the document were new and reliable, it does not support the argument

22   Petitioner puts forward. Although Petitioner contends the document shows that one of his

23   victims was not credible due to psychological conditions, the document appears to concern

24   the physical health of the victim, rather than her mental health, and appears to have been

25   generated by a medical doctor, rather than a psychologist or psychiatrist.

26       Because this document is not new, is not reliable evidence, and does not show that

27   Petitioner is factually innocent, it is not "new evidence of innocence" as required for the

28

Court to find there has been a miscarriage of justice.[7] See Schlup, 513 U.S. at 316 ("Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim.").

The Ninth Circuit has recognized that the petitioner bears the burden of establishing cause and prejudice, or a fundamental miscarriage of justice. See Madrid v. Gregoire, 187 F.3d 648 (9th Cir. 1999) (finding petitioner had not borne his burden of establishing cause); Woolery v. Arave, 8 F.3d 1325, 1331 (9th Cir. 1993) ("the burden of showing 'cause and prejudice' is on the petitioner"); Blumberg v. Cal. Med. Facility, 967 F.2d 584 (9th Cir. 1992) ("The burden is on the petitioner to show cause and prejudice."). Because Petitioner did not carry this burden, Claims 1, 3, 6, 8, and 9 have been procedurally defaulted.

Accordingly, Petitioner is not entitled to relief on Claims 1, 3, 6, 8, and 9.

## 2. Merits Claims

Because the Court concludes that Claims 1, 3, 6, 8, and 9 have been procedurally defaulted, the claims that will be analyzed on the merits are: (2) and (4) that trial counsel was ineffective; (5) that the trial court erred in excluding defense experts' testimony; (7) that the trial court failed to provide accommodations for petitioner's hearing disability; (10) that appellate counsel was ineffective; and (11) that new evidence establishes the exclusion of defense expert testimony resulted in an unfair trial.

The Court will first discuss Petitioner's claim that the trial court did not accommodate Petitioner's hearing disability (Claim 7). The Court will next discuss Petitioner's claims that the trial court erred in excluding defense expert testimony, and that new evidence establishes this exclusion resulted in an unfair trial (Claims 5 and 11).

---

[7] For the same reasons, were Claim 1 not procedurally defaulted, it would fail on the merits. Moreover, the Court notes that a free-standing claim of actual innocence is non-cognizable. See Williams v. Pennsylvania, 136 S. Ct. 1899, 1921 (2016) (noting the United States Supreme Court has not held a freestanding actual innocence claim may be brought).

1    Finally, the Court will discuss Petitioner's claims regarding the ineffectiveness of trial

2    (Claims 2 and 4) and appellate counsel (Claim 10).

### c. Disability Accommodation Claim

4         In Claim 7, Petitioner argues that he received constitutionally inadequate

5    accommodation for his hearing disability. (See Pet. at 5, 9, 27, 124-26.) On direct appeal,

6    the state appellate court considered and rejected this argument:

> Defendant contends the accommodations made for his hearing
> disability deprived him of a fair trial. (*People v. Guillory* (1960)
> 178 Cal.App.2d 854, 861 [trial judge should afford deaf
> defendants reasonable facilities for confronting and cross-
> examining witnesses].) The requirement of reasonable
> accommodations has been codified in Civil Code section 54.8,
> which requires trial court to provide, upon request, "a
> functioning assistive listening system or a computer-aided
> transcription system."
>
> Our high court considered and rejected a similar contention
> in *People v. Freeman* (1994) 8 Cal.4th 450, 479–480
> (*Freeman*). The defendant there had hearing difficulties, and
> counsel and the trial court took repeated steps to resolve the
> problem: the court ordered medical treatment when the
> defendant requested it and made sure he got batteries for his
> hearing aids, and the defendant was given a daily transcript of
> the proceedings. (*Id.* at p. 479.) Moreover, "except for a few
> scattered early occasions, whenever defendant was spoken to he
> responded with no apparent hearing difficulty." (*Ibid.*) Even if
> he occasionally failed to hear something, the high court
> reasoned, there was no reason to assume he missed anything of
> significance or could not participate effectively in the
> proceedings. (*Ibid.*)
>
> The trial court here was aware that defendant needed
> accommodations for his hearing disability, and provided them.
> As the court explained in denying the motion for new trial,
> defendant was in fact provided with both the accommodations
> specified in Civil Code section 54.8. He was able to view a
> computer-aided transcription system, a "realtime feed," and he
> had the use of a headset, although he asserted in his motion for
> new trial that it did not allow him to hear voices adequately. The
> trial judge also stated that he was aware of defendant's hearing
> difficulties and as a result "did purposely and intentionally
> throughout the proceeding observe Mr. Slape," and that he
> appeared to be reading along to the realtime. When he was
> testifying, defendant said on a few occasions that he could not
> hear a question, but otherwise responded to questions posed by
> counsel, and the trial judge stated that in his opinion, defendant
> had "no trouble hearing or answering any of the questions asked
> in an appropriate witness-to-examiner response, none." Here, as

18

1

> in *Freeman,* defendant has not shown he was prejudiced or
> denied a fair trial. (*Freeman, supra,* 8 Cal.4th at pp. 479–480.)

2

3  Slape, 2014 WL 3735360, at *9–10.

4      First, Petitioner's claim is belied by the record. The record reveals that Petitioner

5  was granted accommodations for his hearing disability, in the form of access to a realtime

6  transcript and the use of a headset. (See Ans., Ex. B at 103-04, 918:23-919:27.) The

7  record shows that Petitioner made use of the realtime transcript throughout the trial. (See

8  Ans., Ex. B at 917-18.) Although Petitioner now argues that the realtime transcript

9  provided inadequate accommodation, Petitioner makes no mention of his use of the

10  headset. (See generally, Pet. & Traverse.) In addition, although Petitioner argues he was

11  not offered accommodation while giving his own testimony (see Pet. at 125), the record

12  reveals that Petitioner did have available the accommodation of a headset while testifying

13  but chose not to use it, and did not request the use of a realtime transcript while testifying

14  (see Ans., Ex. B at 919:14-19). It is therefore apparent from the record that Petitioner was

15  offered, and used, disability accommodation throughout his criminal trial. See Slape, 2014

16  WL 3735360, at *10 ("defendant was in fact provided with both the accommodations

17  specified in Civil Code section 54.8"). Indeed, the Court notes that the California only

18  requires an "individual who is deaf or hard of hearing" to "be provided with a functioning

19  assistive listening system or a computer-aided transcription system." See Cal. Civ. Code §

20  54.8(a) (emphasis added). As Petitioner was provided with both, he appears to have

21  received more accommodation than that required under California law. Petitioner's claim

22  that he was not given disability accommodation therefore fails. See Guillory v. Wilson,

23  402 F.2d 34, 35 (9th Cir. 1968) (rejecting, where a trial court "attempted to accommodate

24  the appellant," and "[n]o further objection was made, and there was no indication that

25  appellant was having any difficulty hearing," a claim that appellant was deprived of his

26  constitutional rights because he had difficulty hearing the trial).

27

28

19

Second, as Respondent notes, there does not appear to be any United States Supreme Court authority that would allow Petitioner to receive habeas relief on this claim. "Section 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." Williams v. Taylor, 529 U.S. 362, 412 (2000). "A federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme Court] is, at best, ambiguous." Mitchell v. Esparza, 540 U.S. 12, 17 (2003). "Given the lack of holdings from [the United States Supreme] Court regarding" Petitioner's claim, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" Carey v. Musladin, 549 U.S. 70, 77 (2006). Thus, even if Petitioner's claim did not fail on the facts, Petitioner's claim would fail as a matter of law. See Stevenson v. Lewis, 384 F.3d 1069, 1071 (9th Cir. 2004) (affirming denial of a habeas petition, where the Supreme Court had yet to decide the issue raised by petitioner).

Accordingly, Petitioner is not entitled to relief on Claim 7.

### d. Defense Expert Claims

In Claim 5 and 11, Petitioner argues that the trial court erred in excluding the testimony of defense expert witnesses, and that new evidence establishes this exclusion resulted in an unfair trial. (See Pet. at 7, 14-18, 82-84, 104-05.) The allegedly new evidence was not before the state appellate court and so was not discussed on direct appeal. However, on direct appeal the state appellate court considered and rejected the argument that the trial court erred in excluding certain experts:

> Defendant contends the trial court abused its discretion in excluding evidence by two proposed experts, Dr. Podboy, a clinical and forensic psychologist, and Dr. Harry Friedman, a doctor of osteopathy.

> #### 1. Background

> Defendant sought to introduce the testimony of Dr. Podboy at trial on "the issue of perception and memory as affected by prior trauma." According to defense counsel's declaration, the expert testimony would "inform the jury of various psychological factors that affect perception and the reliability of memory." This included an explanation that "current perceptions can be affected by psychological experiences at the time of the event,"

and that "[m]emory of current perceptions will be influenced by intrusive past feelings regarding similar events." The expert would also testify that massage could cause flashbacks of memories of past sexual assaults and a person might confuse memories and past and current events. Dr. Podboy was also expected to testify that trigger point massage causes referred pain, and that trigger points "usually send their pain to some other site."

It appears that both Doe One and Doe Two had suffered sexual assault in the past. In argument to the trial court, defense counsel described the nature of Dr. Podboy's anticipated evidence about Doe One as follows: "We need testimony that posttraumatic stress sufferers can relive these past memories and can have confusion with these memories. [¶] Also that's going to be clear that she was in a great deal of pain, and I think we need evidence that stressors such as pain can cause the memory and the mind to relive these events that are associated with this pain, and we need expert opinion regarding that fact. [¶] We have the issue of psychotic transference, where she sees things that are just not true. And he can testify that it's not unusual for people who have posttraumatic stress disorder to have a psychotic transfer where she imagines things or has delusions about what reality is all about. [¶] ... [¶] There's evidence from her doctor that she was being treated, that she has sexual abuse in her history and that she's suffering from posttraumatic stress from that injury. She has anxiety and depression as well. [¶] All of those are going to affect her ability to perceive, and it's these unresolved psychological problems that she has [that] can be taken out against Darrell Slape, that she has these incidents in her background where she was assaulted sexually. [¶] She wants to regain control over her life, and psychologically replaces Darrell Slape as those abusers in the past and takes out her anger and her hostility against him. [¶] All of those are issues that Dr. Podboy can address." Defense counsel also informed the court that Doe Two suffered from spina bifida, that the condition could impair thinking and memory, and that Dr. Podboy would testify about those effects.

Defendant sought to introduce Dr. Friedman's testimony "regarding referred sensation in the massage experience from trigger-point massage." His counsel explained that referred sensation meant that "a touching in one part of the body will cause a sensation in another part of the body."

The court excluded the testimony of Dr. Podboy and Dr. Friedman, reasoning that the question of whether people can misperceive events was within the province of the jury and was not an appropriate subject of expert testimony. The court also concluded that a theory that massage released past memories was "a, quite frankly, stretch," but told defense counsel each of the victims could be questioned about how other massages had affected them.

During the court's ruling, defense counsel twice tried to present further argument about the admissibility of Dr. Podboy's testimony, but the trial court refused to hear it. Defense counsel again raised the issue of whether expert testimony on referred sensation would be allowed, and the trial court ruled it inadmissible, stating it was "a stretch for ... expert testimony."

## 2. Discussion

"[E]xpert psychiatric testimony may be admissible to impeach the credibility of a prosecution witness where the witness' mental or emotional condition may affect the ability of the witness to tell the truth. The admissibility of such testimony rests within the discretion of the trial court. Generally, however, *attempts to impeach a prosecution witness by expert psychiatric testimony have been rejected* [citations], except in certain sex offense cases." (*People v. Cooks* (1983) 141 Cal.App.3d 224, 302 (*Cooks* ), italics added.) [FN 6] As our high court has explained, "*there is a 'judicial policy disfavoring attempts to impeach witnesses by means of psychiatric testimony.* [Citations.] California courts have viewed such examinations with disfavor because "'[a] psychiatrist's testimony on the credibility of a witness may involve many dangers: the psychiatrist's testimony may not be relevant; the techniques used and theories advanced may not be generally accepted; the psychiatrist may not be in any better position to evaluate credibility than the juror; difficulties may arise in communication between the psychiatrist and the jury; too much reliance may be placed upon the testimony of the psychiatrist; partisan psychiatrists may cloud rather than clarify the issues; the testimony may be distracting, time-consuming and costly.'" "' (*People v. Chatman* (2006) 38 Cal.4th 344, 375–376 (*Chatman* ), italics added; see also *People v. Alcala* (1992) 4 Cal.4th 742, 781, *People v. Marshall* (1996) 13 Cal.4th 799, 835 (*Marshall* )).

> [FN 6: The court in *Cooks* went on to note that section 1112, which postdated the sex offense cases mentioned, prohibited the trial court from ordering the victim in a sexual assault prosecution to submit to a psychiatric or psychological examination in order to assess his or her credibility. (*Cooks, supra,* 141 Cal.App.3d at p. 302, fn. 61; see also *People v. Anderson* (2001) 25 Cal.4th 543, 575 [section 1112 overruled cases allowing psychiatric examination of complaining witness in sex-crime case to assist in evaluating witness's credibility].)]

In excluding the proffered expert testimony of Dr. Podboy, the trial court relied explicitly on the rule of *Chatman, Marshall,* and *Cooks* that attempts to impeach witnesses through psychiatric testimony are disfavored. We see

22

no abuse of discretion in this ruling. Dr. Podboy had no personal knowledge of either Doe One or Doe Two, and his general testimony on the possible effects of sexual trauma on memory raises several of the concerns enumerated in *Chatman* : the jury might place too much reliance on opinions Dr. Podboy had formed without even examining Doe One or Doe Two, the testimony could be so speculative as to cloud the issues, and presentation of the evidence could be distracting and time-consuming.

Nor do we see any abuse of discretion in excluding the evidence of Dr. Friedman. In any case, even if he should have been allowed to testify about referred sensation, defendant was able to elicit testimony on this subject when cross-examining two of the People's own witnesses, as well as to present it in his own testimony. Defendant has not shown he was prejudiced by the trial court's ruling.

*Slape*, 2014 WL 3735360, at *4–6.

Petitioner contends that the exclusion of defense experts violated his Sixth and Fourteenth Amendment rights. (See Pet. at 14.) First, the United States Supreme Court has acknowledged that the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense. See Nevada v. Jackson, 133 S.Ct. 1990, 1992 (2013) (citations omitted). However, there is no clearly established federal law providing that a state court's discretionary decision to exclude testimony violates a defendant's right to present a defense. See Moses v. Payne, 555 F.3d 742, 758–59 (9th Cir.2009). Without such clearly established federal law, Petitioner's claim fails.

Second, the state appellate court reasonably determined that the trial court was within its discretion to exclude the evidence. The constitutional right to present a complete defense includes the right to present evidence, including the testimony of witnesses. See Washington v. Texas, 388 U.S. 14, 19 (1967). However, the right is only implicated when the evidence the defendant seeks to admit is "relevant and material, and . . . vital to the defense." Id. at 16.

A review of the record reveals that Dr. Friedman's proposed testimony was not vital. The same content was provided by other witnesses. (Compare Ans., Ex. A at 708-09 (argument by Petitioner on appeal, that Dr. Friedman would have testified as to

"referred sensation) with Ans. at 30-31 (cataloging testimony presented to the jury regarding "referred sensation").)

As to Dr. Podboy, in excluding his testimony the trial court relied on well-established California Supreme Court precedent disfavoring the impeachment of a witness through psychiatric testimony. (See Ans., Ex. B at 467 (citing People v. Chatman, 38 Cal. 4th 344 (2006), People v. Marshall, 13 Cal. 4th 799 (1996), and People v. Cooks, 141 Cal. App. 3d 224 (Ct. App. 1983)).) In that precedent, the California Supreme Court explained that such testimony is disfavored because the testimony of a psychiatrist who has not examined a witness – as Dr. Podboy had not examined Petitioner's victims – is of limited relevance; determining credibility is generally considered the province of the jury, and the jury may improperly rely too much on a psychiatrist's testimony; and the testimony may be distracting, time-consuming, and costly. See Chatman, 38 Cal. 4th at 375–76 (describing problems with testimony).

The United States Supreme Court has recognized that state and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials. See Moses, 555 F.3d at 758–59. (internal quotation marks and citations omitted). The exclusion of testimony violates the right to prevent a defense only when the exclusion is "arbitrary or disproportionate to the purposes [the exclusionary rule applied is] designed to serve." Holmes v. South Carolina, 547 U.S. 319, 324 (2006) (internal citation and quotation marks omitted); Michigan v. Lucas, 500 U.S. 145, 151 (1991). Here, the exclusion of Dr. Podboy's testimony was not arbitrary or disproportionate to the rule announced in Chatman; rather, Chatman appears to squarely apply to the instant circumstances. Accordingly, Petitioner has failed to demonstrate that the California appellate court was unreasonable in upholding the exclusion of Dr. Podboy's testimony.

Third, Petitioner's intended use of the expert testimony was to impeach the testimony of one of Petitioner's victims. (See Ans., Ex. A at 326-29 (arguing against the introduction of this testimony for this purpose).) In Nevada v. Jackson the Supreme Court

1   unambiguously held that "[the Supreme] Court has never held that the Confrontation

2   Clause entitles a criminal defendant to introduce extrinsic evidence for impeachment

3   purposes." 133 S.Ct. at 1994 (emphasis original). By contrast, the Court in Jackson noted

4   that it is rare that the right to present a complete defense is violated by the exclusion of

5   defense evidence under a state rule of evidence. Jackson, 133 S.Ct. at 1992. Rejecting a

6   broader constitutional right to present evidence bearing on witness credibility, the Court

7   held that the Confrontation Clause is generally satisfied by the defense's opportunity

8   "expose [testimonial] infirmities through cross-examination." Id. at 1994 (citing Fensterer,

9   474 U.S. at 22). Because Petitioner was able to cross-examine his victims, under Jackson,

10  the trial court's exclusion of the experts' extrinsic impeachment testimony was not a

11  violation of Petitioner's constitutional rights. See Jackson, 133 S.Ct. at 1994; see

12  Doughton v. Foulk, 584 Fed. App'x. 842, 842 (9th Cir. 2014).

13          As to Petitioner's contention that new evidence shows the exclusion of Dr.

14  Friedman's and Dr. Podboy's testimony was prejudicial, the document Petitioner seeks to

15  introduce does not change the analysis. As explained, supra III.B.1.b.iii, Petitioner's

16  evidence is not new, and would not have altered the outcome of Petitioner's case.

17          Accordingly, Petitioner is not entitled to relief on Claims 5 and 11.

18                    **e. Claims of Ineffective Trial Counsel**

19          In Claim 2 and 4, Petitioner argues that he received ineffective assistance of trial

20  counsel. (See Pet., passim.) On direct appeal, the state appellate court considered and

21  rejected some of the grounds on which Petitioner claims his trial counsel was ineffective,

22  ruling as follows:

23                  Defendant contends he was deprived of effective assistance of
                    counsel through his attorney's failure to call or effectively
24                  interview Dr. Podboy and Dr. Friedman.    In support of
                    defendant's motion for a new trial, Dr. Podboy stated in a
25                  declaration that defendant's trial counsel appeared to have little
                    knowledge of the psychological histories of the victims, that he
26                  did not show interest when Dr. Podboy suggested he investigate
                    spina bifida, and that he did not appear to have read the research
27                  materials provided by Marsha Yates, a friend who was helping
                    defendant in the case. Yates submitted a declaration stating that

28

                                        25

trial counsel did not seem aware of the issues related to spina bifida, that he said Podboy was "tainted" as a witness, and that he had not heard defendant's version of events. Dr. Friedman stated in his declaration that he spoke with trial counsel once on the phone and received correspondence from him, but otherwise had little contact with him about the details of his proposed testimony.

"Establishing a claim of ineffective assistance of counsel requires the defendant to demonstrate (1) counsel's performance was deficient in that it fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's deficient representation prejudiced the defendant, i.e., there is a 'reasonable probability' that, but for counsel's failings, defendant would have obtained a more favorable result." (*People v. Dennis* (1998) 17 Cal.4th 468, 540.) "A court must indulge a strong presumption that counsel's acts were within the wide range of reasonable professional assistance." (*Id.* at p. 541.) "Reviewing courts reverse convictions on direct appeal on the ground of incompetence of counsel only if the record on appeal demonstrates there could be no rational tactical purpose for counsel's omissions." (*People v. Lucas* (1995) 12 Cal.4th 415, 442.) Moreover, "[i]f a defendant has failed to show that the challenged actions of counsel were prejudicial, a reviewing court may reject the claim on that ground without determining whether counsel's performance was deficient." (*People v. Mayfield* (1997) 14 Cal.4th 668, 784.) Prejudice is established when counsel's performance "'so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.'" (*Ibid.*, quoting *Strickland v. Washington* (1984) 466 U.S. 668, 686.) Prejudice must be proved as a demonstrable reality, not simply speculation. (*People v. Williams* (1988) 44 Cal.3d 883, 937.)

Defendant has not met his burden to show his counsel's failure to inquire further of the proposed expert witnesses or to call them at trial prejudiced him. Trial counsel adequately informed the trial court of the substance of Dr. Podboy's proposed testimony, and argued vigorously for its admission. Based on its own analysis of the law, the trial court ruled the evidence inadmissible. Trial counsel also explained that Dr. Friedman would testify about referred sensation. It would be pure speculation to conclude that the trial court would have admitted the testimony of either proposed expert if trial counsel had prepared more thoroughly. Moreover, as we have noted, defendant was able to elicit from two prosecution witnesses testimony that pressure in one part of the body during massage could cause sensation in another part of the body, including painful and pleasurable sensations in the genitals. Because defendant has not shown prejudice, we need not consider whether his counsel's performance was in fact deficient.

<u>Slape</u>, 2014 WL 3735360, at *6–7.

In addition to trial counsel's alleged failures with respect to expert witnesses, Petitioner now asserts that trial counsel was ineffective in not arguing that the elements of Petitioner's crimes were unmet and the jury instructions inadequate, failing to object to the introduction of propensity evidence and improper argument by the prosecution, and not arguing that Petitioner received supposedly improper notice of the charges against him. (See Traverse at 11-12; see also Ans. at 15-17 (attempting to decipher and respond to Petitioner's rambling allegations).)

Petitioner's claims are without merit. In order to prevail on a Sixth Amendment claim for ineffectiveness of trial counsel, Petitioner must establish two things. First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as the result of the alleged deficiencies. Id. at 697.

A "doubly" deferential judicial review is appropriate in analyzing ineffective assistance of counsel claims under § 2254. See Cullen v. Pinholster, 131 S. Ct. 1388, 1410-11 (2011); Harrington v. Richter, 131 S. Ct. 770, 788 (2011) (same); Premo v. Moore, 131 S. Ct. 733, 740 (2011) (same). The general rule of Strickland, i.e., to review a defense counsel's effectiveness with great deference, gives the state courts greater leeway in reasonably applying that rule, which in turn "translates to a narrower range of decisions that are objectively unreasonable under AEDPA." Cheney v. Washington, 614 F.3d 987, 995 (9th Cir. 2010) (citing Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). When § 2254(d) applies, "the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's

deferential standard." Harrington, 131 S. Ct. at 788. Under a "doubly" deferential judicial review, the state appellate court did not unreasonably apply Strickland in rejecting Petitioner's argument. See Pinholster, 131 S. Ct. at 1410-11; Harrington, 131 S. Ct. at 88.

**As to the counsel's supposed ineffectiveness with regard to expert witnesses,** the Court has already concluded that the trial court did not err in excluding Petitioner's experts. As the state appellate court noted, "[i]t would be pure speculation to conclude that the trial court would have admitted the testimony of either proposed expert if trial counsel had" behaved differently. Slape, 2014 WL 3735360, at *7. Moreover, Petitioner was able to introduce some of the experts' evidence through other means. See id. Accordingly, Petitioner has shown neither that trial counsel was ineffective in being unable to get the experts' testimony admitted, nor that the supposed ineffectiveness prejudiced Petitioner.

**As to Petitioner's vague claim that trial counsel was inadequate in not arguing that the elements of Petitioner's crimes were unmet,** the Court agrees with Respondent: "[t]he jury instructions, not the arguments of counsel, are what control the jury's assessment of the evidence." Ans at 16. Petitioner has not established ineffectiveness or prejudice on this ground.

**As to Petitioner's argument that trial counsel should have challenged the jury instructions, or requested different jury instructions,** this argument fails.[8] First, the Court notes that the instructions as read to the jury are direct quotations of instructions approved by the California Judicial Council. (See Ans., Ex. B at 779:27-807:8.) This undercuts Petitioner's argument that the elements of Petitioner's crimes were not clearly defined (see Pet. at 13), or any suggestions that the instructions were insufficient or confusing on their face. Moreover, Petitioner does not explain how the model instructions should have been modified to suit his particular case, or cite any authority to support a modification. (See generally, Pet.)

---

[8] As discussed, supra III.B.1.b.i, Petitioner procedurally defaulted Claims 6 and 8, which challenged jury instructions. However, even had Petitioner not procedurally defaulted these claims, they would fail on the merits for the reasons stated here.

1    <u>Second</u>, although Petitioner argues his counsel should have requested additional

2    instructions on consent as a defense (<u>see id</u>. at 23, 40, 42, 119, 122, 133), the defense

3    theory at trial was that Petitioner's sexual assaults "never happened." (<u>See</u> Ans., Ex. B at

4    836:2-3.) It is well-established that counsel is not ineffective for deciding not to request

5    jury instructions that are inconsistent with counsel's trial theory. <u>See Butcher v. Marquez</u>,

6    758 F.2d 373, 377 (9th Cir. 1985) ("Defense counsel need not request instructions

7    inconsistent with its trial theory.") (additionally noting that a trial court does not err by not

8    sua sponte giving such inconsistent instructions); <u>accord Hollenback v. Ryan</u>, 667 F.

9    App'x 636 (9th Cir. 2016). Moreover, the jury heard directly from Petitioner's victims

10   that they had <u>not</u> consented to being sexually assaulted by Petitioner. (<u>See</u> Ans, Ex. B at

11   509:3-6, 654:24-26.) Petitioner's counsel could have reasonably decided that, as

12   Petitioner's victims expressly informed the jury they did not consent to Petitioner's

13   assaults, requesting jury instructions on a consent defense would harm Petitioner's case

14   more than it would help. <u>See, e.g., United States v. Gregory</u>, 74 F.3d 819, 823 (7th Cir.

15   1996) ("[T]he decision not to request a limiting instruction is solidly within the accepted

16   range of strategic tactics employed by trial lawyers in the mitigation of damning evidence.

17   If the lawyer cannot stop the evidence from being admitted, it is perfectly rational to

18   decide not to draw further attention to it . . . .").

19   **As to Petitioner's argument that trial counsel should have objected to the**

20   **introduction of propensity evidence**, the record shows that counsel did so. (<u>See</u> Ans.,

21   Ex. B at 115:9-118:15.) Moreover, even if the evidence of Petitioner's prior sexual

22   misconduct had been excluded as propensity evidence, it would have been admissible as

23   evidence regarding intent.[9] (<u>See</u> Ans. at 117:23-28 (the court, noting that the evidence was

24   admissible to demonstrate intent).) Accordingly, Petitioner cannot show he was prejudiced

25   by counsel's inability to have this evidence excluded. <u>See Hebner v. McGrath</u>, 543 F.3d

26

27   [9] As discussed, <u>supra</u> III.B.1.b.i, Petitioner procedurally defaulted Claim 3, which
     challenged the admission of propensity evidence. However, even had Petitioner not
28   procedurally defaulted this claim, it would fail on the merits for the reasons stated here.

1133, 1137 (9th Cir. 2008) (Because "the jury would have heard the evidence anyway, because the trial court would have admitted Penelope's testimony under the well-established rule permitting evidence regarding common plan or intent, Cal. Evid.Code § 1101(b)," "Hebner cannot establish the prejudice required by Strickland to make out a successful claim of ineffective assistance of counsel."); accord Schwerin v. Knowles, 252 F. App'x 842, 843 (9th Cir. 2007) (rejecting claim of ineffective assistance, where the failure to object to propensity evidence did not prejudice petitioner).

**As to Petitioner's argument that counsel should have objected to insufficient notice** of the charges against Petitioner, the record shows that Petitioner had adequate notice. [10] Petitioner challenges the notice he received regarding his conviction for simple battery under California Penal Code § 242. However, under California law, simple battery appears to be a lesser-included offense of sexual battery. See Campos v. Stone, 201 F. Supp. 3d 1083, 1091 (N.D. Cal. 2016) ("The jury convicted Campos of . . . one count of misdemeanor battery, in violation of Cal. Penal Code § 242, a lesser-included offense of one of the sexual battery charges."); People v. Azeem, No. B150816, 2002 WL 551002, at *2 (Cal. Ct. App. Apr. 15, 2002) (describing "simple battery" as "the lesser included offense of sexual battery," and citing Cal. Penal Code § 243.4(c)) (unpublished); accord Ortega-Mendez v. Gonzales, 450 F.3d 1010, 1018 (9th Cir. 2006) ("battery under section 242 is a lesser included offense of sexual battery under section 243.4(a)"); People v. Ortega, 240 Cal. App. 4th 956, 972 (2015) (describing simple battery as a lesser-included offense of Cal. Penal Code § 243(a) and (e)). Indeed, on direct appeal the California appellate court noted that "misdemeanor battery" is "the lesser included offense" "of sexual battery by fraud." Slape, 2014 WL 3735360, at *3.

It has long been established that an indictment charging a defendant with violation of one statute "necessarily encompasse[s] another lesser-included offense, thus sufficiently

---

[10] As discussed, supra III.B.1.b.i, Petitioner procedurally defaulted Claim 9, which challenged the allegedly insufficient notice. However, even had Petitioner not procedurally defaulted this claim, it would fail on the merits for the reasons stated here.

putting the defendant on notice of the need to defend against both statutes." <u>Gautt v. Lewis</u>, 489 F.3d 993, 1007 (9th Cir. 2007) (citing <u>Salinas v. United States</u>, 277 F.2d 914, 918 (9th Cir.1960)). Here, the indictment charged Petitioner with sexual battery by fraud under California Penal Code § 243(c). (<u>See</u> Pet. at 14 (raising argument); <u>see also</u> Ans. Ex. A at 479 (jury verdict, convicting Petitioner of lesser offense).) Because simple battery is a lesser-included offense of sexual battery, Petitioner received notice that he could be convicted of simple battery. <u>See Gautt</u>, 489 F.3d at 1007. Counsel was not ineffective in failing to argue against the application of clearly established law.

As to Petitioner's conclusory argument that trial counsel should have objected to prosecutorial misconduct (<u>see</u> Pet. at 4, 6, 8, 10, 25, 134, 140), Petitioner nowhere specifies exactly what the prosecutor did or said that Petitioner believes constituted misconduct (<u>see generally</u>, Pet.), and misconduct is not apparent on the face of the trial transcript (<u>see generally</u>, Ans., Ex. B). This argument therefore fails.

Accordingly, Petitioner is not entitled to relief on Claims 2 and 4.

### f. Claim of Ineffective Appellate Counsel

In Claim 10, Petitioner argues that he received ineffective assistance of appellate counsel. (<u>See</u> Pet., <u>passim</u>.) Petitioner did not raise this argument on direct appeal. Although the Petition is remarkably unclear on what Petitioner believes appellate counsel did wrong, the Court has attempted to identify the alleged errors.

First, Petitioner appears to argue that appellate counsel erred in not sufficiently arguing that trial counsel was ineffective. (<u>See</u> Pet. at 6, 26, 123.) However, as noted above, trial counsel was not ineffective. Because "[f]ailure to raise a meritless argument does not constitute ineffective assistance," <u>Boag v. Raines</u>, 769 F.2d 1341, 1344 (9th Cir. 1985), appellate counsel was not ineffective on this ground.

Second, Petitioner argues that appellate counsel failed to include Petitioner's argument regarding actual innocence. (<u>See</u> Pet. at 3.) However, as noted above, this argument was meritless, and so appellate counsel was not ineffective in failing to raise it.

31

Finally, Petitioner vaguely contends that appellate counsel was ineffective in refusing to "expos[e] the prosecution's invalid legal argument, misstatements of law, and other errors of the court." (Pet. at 141.) However, Petitioner does not identify what the prosecutor "invalid[ly" argued or misstated, or identify the errors which appellate counsel should have raised. (See generally, id.) Accordingly, Petitioner has failed to show that appellate counsel was ineffective on this ground.

Because Petitioner has failed to identify any way in which appellate counsel was ineffective, Petitioner is not entitled to relief on Claim 10.

### IV. CONCLUSION

After a careful review of the record and pertinent law, the Court concludes that the Petition for a Writ of Habeas Corpus must be **DENIED**.

Further, a Certificate of Appealability is **DENIED**. See Rule 11(a) of the Rules Governing Section 2254 Cases. Petitioner has not made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Nor has Petitioner demonstrated that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Petitioner may not appeal the denial of a Certificate of Appealability in this Court but may seek a certificate from the Court of Appeals under Rule 22 of the Federal Rules of Appellate Procedure. See Rule 11(a) of the Rules Governing Section 2254 Cases.

The Clerk shall terminate any pending motions, enter judgment in favor of Respondent, and close the file.

**IT IS SO ORDERED**.

Dated: 1/6/20

EDWARD J. DAVILA
United States District Judge

Order Denying Petition for Writ of Habeas Corpus; Denying COA
P:\PRO-SE\EJD\HC.16\05408Slape_den-habeas.docx